UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MARSHA J. GRAHAM-DICKERSON                                                   PLAINTIFF

      VS.                              Civil No. 3:14-cv-3038-MEF

CAROLYN W. COLVIN,                                                           DEFENDANT
Commissioner of Social Security Administration

## MEMORANDUM OPINION

Plaintiff, Marsh J. Graham-Dickerson, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.     Procedural Background:

Plaintiff filed her application for DIB on September 15, 2011, alleging an onset date of May 15, 2011, due to scoliosis, depression, chronic pain, and short-term memory loss. (T. 231) Plaintiff's application was denied initially and on reconsideration. (T. 88-90, 92-93). Plaintiff then requested an administrative hearing, which was held in front of Administrative Law Judge ("ALJ"), Hon. Edward M. Starr, on November 20, 2012. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 37 years of age, had obtained the equivalent of a high education, and was a certified paraprofessional. (T. 30, 36, 232) Her past relevant work experience included working as a paraprofessional from October 2003 until May 2005, a file clerk from September 2006 until March 2007, an assistant at a law firm from October 2007 until March 2008,

a teacher's aide at a preschool from October 2008 until May 2009, and a general contract laborer from November 2010 until May 2011. (T. 232)

On April 19, 2013 the ALJ found Plaintiff's chronic back pain, scoliosis, shingles, and mood disorder, not otherwise specified, severe because they had more than a minimal impact upon the Plaintiff's ability to engage in work-related activities. (T. 11) Considering the Plaintiff's age, education, work experience, and the residual functional capacity ("RFC") based upon all of her impairments, the ALJ concluded Plaintiff was not disabled from May 15, 2011, through the date of his decision issued April 19, 2013. The ALJ determined Plaintiff had the RFC to perform light work, except she could only occasionally climb, balance, crawl, kneel, stoop, and crouch. Additionally, Plaintiff could perform work where interpersonal contact was routine, but superficial; complexity of tasks was learned by experience with several variables; judgment was used within limits; and, supervision required was little for routine tasks, but detailed for non-routine tasks. (T. 13)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on February 27, 2014. (T. 1-3) Plaintiff then filed this action on April 11, 2014. (Doc. 1) This case is before the undersigned pursuant to consent of the parties. (Doc. 6) Both parties have filed briefs, and the case is ready for decision. (Doc. 10 and 11)

## II.    Applicable Law:

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v.*

*Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work

experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520(a)(4)(v).

### III.    Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff had not been disabled from the alleged date of onset on May 15, 2011 through her last date insured, December 31, 2013. Plaintiff raises two issues on appeal, which can be summarized as: (A) the ALJ's RFC determination is not supported by substantial evidence; and, (B) the ALJ's Decision is not supported by substantial evidence. (Doc. 10, pp. 8-11)

In order to qualify for DIB, a claimant must show that he or she became disabled during the period in which he or she met the DIB requirements. *Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001). A claimant who becomes disabled after the expiration of her insured status is not entitled to DIB. *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998). Thus, the period of review is from May 15, 2011, the alleged onset date, through December 31, 2013, Plaintiff's last insured date**.**

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### RFC Determination:

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence. The Court disagrees.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace." "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004).

In assessing Plaintiff's RFC, the ALJ considered Plaintiff's testimony at the hearing, disability and function reports, the treatment records from Dr. Daniel S. Weeden, Dr. Lance Faddis, Mountain Home Christian Clinic, Dr. Kam S. Lie, Baxter Regional Medical Center, Dr. Mark. L. Ungerank, the third party function report submitted by Cody Graham (Plaintiff's son), testimony

of Donnie Dickerson (Plaintiff's fiancé), and the state agency medical consultative examinations. (T. 13-18)

Plaintiff raised two issues regarding the ALJ's RFC assessment. First, Plaintiff claims the ALJ erred when he assigned some weight to the mental diagnostic evaluation of Dr. Robert Hudson, psychiatrist and state agency medical consultant, and great weight to the opinion of Dr. Jay Rankin, non-examining state agency medical consultant. (Doc. 10, pp. 9-10) Second, Plaintiff alleges her chronic pain and her shingles would cause cumulative absenteeism making her unemployable. (Doc. 10, pp. 10-11) The Court disagrees.

In reviewing the record, the Court finds the Plaintiff's mental health treatment sparse. Plaintiff was treated in 2004 by Dr. Weeden for anxiety and depression, and she was prescribed Lexapro. Plaintiff sought treatment again from Dr. Weeden again in 2005. Dr. Weeden opined Plaintiff could have anxiety with a new history compatible with a bipolar type depression; however, she needed further evaluation in order to establish the proper treatment and referred her to Dr. Chaplin. (T. 478) Records do not show that Plaintiff ever followed through with the referral and sought treatment from Dr. Chaplin. In June 2005, Plaintiff again sought treatment from Dr. Weeden after Plaintiff's husband was killed in a trucking accident. Plaintiff indicated the Lexapro helped. (T. 479)

In March 2008, Dr. Faddis, changed her Lexapro to Paxil for depression and anxiety. (T. 485) Plaintiff was treated for anxiety at the Mountain Home Christian Clinic in November 2011. The doctor's notes indicated she had situational stress and recommended she seek counseling. (T. 319)

The ALJ ordered a mental diagnostic evaluation and two mental non-examining consultative examinations. Dr. Hudson performed a mental diagnostic evaluation of the Plaintiff and noted Plaintiff missed two prior appointments and was thirty minutes late for her appointment on

February 24, 2012. (T. 379) Plaintiff reported she was not taking any psychiatric medications and was not being seen by a mental health provider. (T. 379) Plaintiff indicated she was seeking a divorce from her third husband, whom she had lived with for only a matter of days. Plaintiff reported bouts of shingles since 2007. Lately the shingles occurred every four months, but since she was prescribed B-12 she had not had a flare up in four months.

Dr. Hudson observed Plaintiff was visibly in pain after sitting for only fifteen minutes and she clearly had an altered gait. (T. 380) Plaintiff appeared clean, with good hygiene, and she was appropriately dressed. She had a good rapport, and was cooperative and pleasant. Plaintiff's mood was mildly dysthymia with underlying agitation; Plaintiff's affect was depressed, anxious, and irritable. (T. 381) Plaintiff did not exhibit any anger, and she laughed during the evaluation. (T. 381) Her thought processes appeared logical, relevant, and goal directed.

Dr. Hudson diagnosed Plaintiff with mood disorder, not otherwise specified, personality disorder, not otherwise specified, and assessed a global assessment of functioning ("GAF") score of 60. Dr. Hudson noted Plaintiff was able to drive. Plaintiff might forget payment deadlines, but could basically handle money. She did not like to shop and would have her daughter or friend shop for her. (T. 382) Plaintiff was limited in her social interaction as she was not interested in dating, but she attended church.

Dr. Hudson observed no significant limitations in Plaintiff's ability to communicate. There were no mental or cognitive limitations on basic work-like tasks, although Plaintiff was highly self-aware which could be problematic. (T. 382) It did not appear to Dr. Hudson that Plaintiff had significant limits on her ability to attend and sustain concentration, although she had a very low score on her digit span backwards. Dr. Hudson noted Plaintiff's chronic pain, lack of self-esteem

7

and combative attitude could limit her persistence in the completion of tasks; however she would be able to complete them in a timely fashion. (T. 382)

On March 1, 2012, Dr. Jay Rankin, state agency medical consultant, reviewed the record and completed a mental RFC. Dr. Rankin opined Plaintiff was moderately limited in the following areas: the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to respond appropriately to changes in the work setting; and, the ability to set realistic goals or make plans independently of others. (T. 388) Plaintiff was mildly limited in her activities of daily living and maintaining social functioning, while she was moderately limited in maintaining concentration, persistence, and pace. (T. 400) Dr. Rankin opined Plaintiff could perform at the level of semiskilled. (T. 389) Dr. Jerry R. Henderson, state agency medical consultant, reviewed the evidence on March 30, 2012 and affirmed Dr. Rankin's assessment. (T. 412)

In weighing the evidence, the ALJ will generally give more weight to the opinion of a source who had examined the Plaintiff than to the opinion of a source who had not examined the Plaintiff. 20 C.F.R. § 416.927(c)(1). The weight given to non-examining sources depends "on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources." 20 C.F.R. § 416.927(c)(3). The more consistent an opinion is with the record, as a whole, the more weight it will be given. 20 C.F.R. § 416.927(c)(4).

The ALJ determined Dr. Hudson was an acceptable source, had specialized knowledge diagnosing mental impairments, and personally examined the Plaintiff; however, the ALJ opined

Dr. Hudson's opinion was slightly more limiting than the objective medical evidence of the record would support. (T. 17) Thus, the ALJ accorded Dr. Hudson's opinion "some weight." (T. 17)

Even though Dr. Rankin was a non-examining physician, he was well versed in the "assessment of functionality as it pertains to the disability provisions of the Social Security Act, as amended." (T. 18) The ALJ gave Dr. Rankin's opinion great weight as his findings were fully supported by the objective medical evidence. (T. 18)

An ALJ may reject the conclusions of any medical expert, whether they were hired by the Plaintiff or by the government, if they were inconsistent with the record as a whole. *Pearsall v. Massanari*, 274 F.3d at 1219; *Wagner v. Astrue*, 499 F. 3d 842, 848 (8th Cir. 2007); *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). The Plaintiff highlights Dr. Hudson's observation that Plaintiff had "an oddness about her" and it sounded as though she had a low threshold for verbal confrontation if not pleased with something. (Doc. 10, p. 9) However, the Plaintiff failed to mention Dr. Hudson's observations where Plaintiff had no significant limitations in the ability to communicate, perform basic work-like tasks, attend and sustain concentration, and complete tasks. (T. 382) Nonetheless, the ALJ incorporated, in his Decision, social limitations where the Plaintiff could perform work where interpersonal contact was routine, but superficial. (T. 13)

The lack of formal treatment by a psychiatrist, psychologist, or other mental health professional was a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). The records did not show Plaintiff received any mental health treatment. Furthermore, on April 12, 2012, Plaintiff's psychiatric examination at the emergency room at Baxter Regional Medical Center by Dr. Allen Jackson showed Plaintiff was cooperative, her mood and affect were appropriate, and she exhibited normal judgment. (T. 458) The undersigned finds the ALJ appropriately discounted Dr. Hudson's

opinion after determining his opinion was more limiting than the objective medical evidence and that Plaintiff's lack of mental health treatment did not warrant greater mental limitations.

Next, Plaintiff alleges her chronic pain and her shingles would cause cumulative absenteeism making her unemployable. (Doc. 10, p. 10) After reviewing the record, the undersigned finds there is substantial evidence to support the ALJ's RFC assessment.

Plaintiff was treated by Dr. Faddis in July 2005 after being in a motor vehicle accident where Plaintiff did not lose consciousness. (T. 480) Plaintiff indicated she had tingling, numbness, joint stiffness, and lower back pain. Upon examination, Dr. Faddis observed Plaintiff had full range of motion in her upper and lower extremities. Plaintiff was prescribed Flexeril. (T. 480)

Plaintiff next sought treatment from Estes Chiropractic clinic for her neck and low and mid back pain from July 2005 until October 2005. Throughout the course of her treatment the doctor indicated Plaintiff's condition had improved, and by the end of her treatment she had minimal pain in her neck and back. (T. 427, 428, 429, 430, 431, 432, 433, 434)

In March 2008 Plaintiff sought treatment from Dr. Faddis for neck and shoulder pain. (T. 485) Plaintiff wanted to switch from Lexapro to a new drug because Lexapro no longer worked. An x-ray of her cervical spine showed no bony lesion or fracture; however, there was some exaggerated curvature of the cervical spine. (T. 485) Plaintiff was prescribed Paxil for her depression and anxiety, Flexeril for her neck pain, and Ibuprofen as needed. (T. 485)

Plaintiff was treated at the Mountain Home Christian Clinic in November 2010. Plaintiff indicated she smoked one pack of cigarettes daily. (T. 317) While Plaintiff had good range of motion in her neck and back, she experienced pain in both areas. Plaintiff was diagnosed with scoliosis. The doctor's impressions were situational stress and chronic back pain; he prescribed Flexeril and Ibuprofen and recommended counseling. (T. 319)

Plaintiff established chiropractic care with Twin Lakes Chiropractic, Dr. Ungerank, on February 15, 2011. (T. 341) Plaintiff was diagnosed with cervicobrachial syndrome (diffuse), thoracic root lesions, not elsewhere classified, and thoracic or lumbarsacral neuritis or radiculitis, unspecified. (T. 341) Plaintiff complained of pain in her head, neck, spine, ribs, and pelvic regions. (T. 342-343) The notes indicated the pain was attributed to an extended abnormal posture while sleeping. (T. 342) Plaintiff indicated the symptoms radiated to the right shoulder, upper arm, and elbow. (T. 342) Over-the-counter medications temporarily alleviated the pain. (T. 342) Plaintiff denied abdominal pain and constipation. (T. 344) Plaintiff reported nausea, hair loss, limb weakness, and anxiety. (T. 344) Upon examination, Dr. Ungerank observed Plaintiff had moderate limitation due to stiffness in her lumbar flexion and extension. (T. 346)

On September 27, 2011, Plaintiff sought treatment at Salem 1st Care Clinic due to a sore throat and pressure in her ears. The notes indicated she smoked one pack of cigarettes a day. (T. 450) Plaintiff was assessed with bronchitis and counseled on smoking cessation. (T. 451) On September 28, 2011, Plaintiff sought treatment due to an outbreak of shingles at Salem 1st Care Clinic. Plaintiff indicated she had a recurrent problem with shingles since 2007. (T. 452) The notes indicated Plaintiff was overweight and she had a mild wheeze. (T. 453) Plaintiff was diagnosed with shingles and bronchitis. Plaintiff was to call and make an appointment for the shingles vaccination in two to three weeks. (T. 453)

On November 3, 2011, Plaintiff established care with Dr. Lie. Plaintiff complained of right abdominal pain, right ovarian pain, scoliosis, back pain, and pain in the right rear side of her head. (T. 336) The notes indicated Plaintiff had good exercise habits, she did not have a physical disability, and her activities of daily living were normal. (T. 336) Upon examination, Plaintiff had abdominal pain, constipation, muscle aches, and pain and stiffness in joints. (T. 337) Plaintiff's

range of movement of her neck was normal, despite experiencing mild pain. (T. 338) The examination of her back was normal. (T. 338) Dr. Lie's assessment was arthritis, neck pain, headaches, mid right abdominal pain, constipation, obesity, anxiety, and mild scoliosis. (T. 339) Dr. Lie recommended Plaintiff take Dulcolax, Miralax, get regular exercise, and eat a low cholesterol diet. (T. 339)

Plaintiff was treated at the emergency room at Baxter Regional Medical Center by Dr. Margo Lockyer in July 2011 for an abscess on the back of her leg where a shingles blister had broken open. (T. 470) Upon examination, Plaintiff had normal range of movement and strength with no tenderness or swelling in her extremities. (T. 472) Plaintiff was diagnosed with herpes zoster, prescribed Acyclovir, and discharged. (T. 472)

Plaintiff was treated again on April 10, 2012 at Baxter Regional Medical Center for an upper respiratory infection. (T. 462) Upon examination, Plaintiff had a normal range of movement and strength. (T. 463) On April 20, 2012, Plaintiff was treated at the emergency room at Baxter Regional Medical Center by Dr. Jackson for shingles pain in her right leg for the past twenty-four days and bronchitis. (T. 457) Plaintiff reported she did not have any back, muscle, or joint pain, and her scoliosis had been resolved. (T. 457) Plaintiff reported smoking two packs of cigarettes per day. (T. 458) Upon examination, Plaintiff had normal range of movement and strength with no tenderness or swelling. (T. 458) Plaintiff was diagnosed with shingles, prescribed Acyclovir, and discharged. (T. 459)

Plaintiff testified she had shingles flare ups every couple of months and she could not be around people due to her being contagious. (T. 45) Plaintiff stated that when she had an outbreak of shingles she was bed-ridden for a week. (T. 70-71)

Plaintiff failed to follow the recommended course of treatment for her shingles when the doctor at Salem 1st Care Clinic recommended that Plaintiff receive a shingles vaccination and there are no records indicating she ever received one. (T. 453) *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility"). Moreover, there is inconsistency in Plaintiff's reporting of the shingles flare ups. On April 20, 2012, Plaintiff was treated at the emergency room at Baxter Regional Medical Center by Dr. Jackson for shingles pain in her right leg *for the past twenty-four days* and bronchitis (T. 457); however, Plaintiff was at the hospital just ten days before, on April 10, 2012, and she never reported the outbreak. (T. 459) On February 24, 2012, Plaintiff reported to Dr. Hudson bouts of shingles since 2007; however, since being prescribed B-12, she had not had a flare up in four months. (T. 380) "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012)(quoting *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010)).

Regarding Plaintiff's other physical impairments, at the time of the hearing, Plaintiff was only taking Aleve, ibuprofen, and Naproxen, and her last complaint of pain regarding her back was in November 2011. *See Hepp v. Astrue*, 511 F. 3d 798, 807 (8th Cir. 2008) (moderate, over-the-counter medication for pain does not support allegations of disabling pain). When Dr. Lie performed her examination of the Plaintiff in 2011 she noted Plaintiff's back was normal. (T. 338) Plaintiff reported she did not have any back, muscle, or joint pain to Dr. Jackson in 2012. (T. 457) In reviewing her medical records, Plaintiff's scoliosis was resolved, her shingles were under control with treatment, and she had not complained of back pain since 2012.

In addition to the medical records, the consultative physical examiner's medical findings also supported the ALJ's RFC determination. At the request of the state agency, Dr. Subramanium

13

Anandaraj conducted a physical consultative examination on December 6, 2011. Upon examination Dr. Anandaraj observed Plaintiff's flexion of the bilateral hips was 90 degrees, flexion of the lumbar spine was 70 degrees, and she had normal range of the lumbar spine despite some tenderness. (T. 358) Plaintiff had a normal range of motion in her shoulders, elbows, wrists, hands, knees, and ankles. (T. 358) She did not have any muscle spasms and her straight leg raises were negative. (T. 359) Plaintiff did not have any muscle weakness, muscle atrophy, sensory abnormalities, or gait coordination. She was able to hold a pen and write, touch fingertips to palm, oppose thumb to fingers, pick up a coin, stand and walk without the use of assistive devices, and her grip strength was normal; however, she was unable to walk on her heel and toes and squat and arise from a squatting position. (T. 359) Dr. Anandaraj diagnosed Plaintiff with depression, scoliosis, and a history of chronic back pain. Dr. Anandaraj assessed Plaintiff with mild limitations in prolonged walking, standing, sitting, lifting, carrying, and handling. (T. 360) The ALJ determined Dr. Anandaraj was an acceptable medical source and his opinion was given great weight, as it was supported by the objective medical evidence of record. (T. 18)

The ALJ also took into consideration the December 8, 2011 RFC assessment of Dr. Stephen A. Whaley, state agency medical consultant. After reviewing the record, Dr. Whaley opined Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, she could stand, sit, and walk about six hours in an eight hour work day, and she was unlimited in pushing and pulling. (T. 370) She could occasionally climb, balance, stoop, kneel, crouch, and crawl. (T. 371) Dr. Whaley opined Plaintiff was capable of performing light work with postural limitations. (T. 376) After the agency received the activities of daily living, the ALJ provided them to Dr. Whaley. On December 12, 2011 Dr. Whaley opined the activities of daily living were partially credible and he affirmed his prior assessment of December 8, 2011. (T. 378) On request for medical advice Dr. Jim Takach

reviewed the record on March 31, 2012 and affirmed Dr. Whaley's RFC assessment. (T. 413) Even though Dr. Whaley was a non-examining physician, the ALJ found he was well versed in the assessment of functionality as it pertains to the disability provisions of the Act, his findings were supported by the objective medical evidence, and his opinion was given great weight. (T. 18)

The ALJ also took into consideration Plaintiff's activities of daily living in his determination of Plaintiff's RFC. In the Plaintiff's most recent Function Report, Plaintiff indicated she was able to take and pick her daughter up from school, she did not experience any problems with personal care, and she prepared simple meals daily. (T. 251) Plaintiff was able to do some cleaning, laundry, and she push mowed the lawn. She drove a car, shopped, and handled finances. (T. 252) She talked on the phone and attended church on a regular basis. (T. 253) While Plaintiff noted she had problems getting along with family, friends, and neighbors, due to unsafe reasons, she indicated she got along with authority figures very well. (T. 254-255) Plaintiff reported she could follow written instructions pretty well, but not spoken instructions. (T. 254)

After reviewing the record, the undersigned finds the types of activities the Plaintiff was engaged in on a daily basis were not consistent with her complaints of disabling symptoms and limitations. *See Roberson v. Astrue,* 481 F.3d 1020, 1025 (8th Cir. 2007) (affirming ALJ's finding of no disability where claimant "engaged in extensive daily activities," testifying "that she took care of her eleven-year-old child, drove her to school and did other driving, fixed simple meals for them, did housework, shopped for groceries, and had no difficulty handling money").

While it is the ALJ's duty to develop the record, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five. *Harris v. Barnhart,* 356 F.3d 926, 931 n. 2 (8th Cir. 2004). Based on the objective medical evidence, the state-agency evidence, the testimony of the Plaintiff, the third

party statement, and testimony of her fiancé, the undersigned finds the RFC determined by the ALJ is supported by substantial evidence.

### ALJ's Decision:

Plaintiff also argues that the ALJ's Decision is not supported by substantial evidence. The Plaintiff's argument is without merit.

Once it is established that the claimant cannot return to her previous occupation, the Commissioner bears the burden to show that a significant number of appropriate jobs exist for the claimant. 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater,* 108 F.3d 178, 180 (8th Cir. 1997). In the present case, the ALJ formulated a hypothetical based on the same age, education, work experience, and RFC as Plaintiff could perform. The vocational expert determined Plaintiff could perform other unskilled light jobs, such as a housekeeper or cleaner, machine tender, and inspector or tester. (T. 303-304) The ALJ also determined the vocational expert's testimony was consistent with the information contained in the *Dictionary of Occupational Titles*. (T. 19)

"A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010) (citing *Grissom v. Barnhart,* 416 F.3d 834, 837 (8th Cir. 2005). "In fashioning an appropriate hypothetical question for a vocational expert, the ALJ is required to include all the claimant's impairments supported by substantial evidence in the record as a whole." *Swope v. Barnhart*, 436 F.3d 1023, 1025 (8th Cir. 2006) (citing *Grissom v. Barnhart*, 416 F.3d 837).

The Court finds the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.

*See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Thus, the vocational expert's testimony provided substantial evidence for the ALJ's decision. *See Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008) (recognizing that VE's testimony is substantial evidence when it is based on accurately phrased hypothetical capturing concrete consequences of claimant's limitations).

### IV.   Conclusion:

Having carefully reviewed the record as a whole, the undersigned finds that substantial evidence supports the Commissioner's decision denying Plaintiff benefits, and the Commissioner's decision should be affirmed. Plaintiff's Complaint should be dismissed with prejudice.

Dated this 14th day of July, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE